UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VANDY R. BRYANT,  )  | CASE NO. 4:05CV2783 |
| Plaintiff,  ) ) | |
| ) | JUDGE PETER C. ECONOMUS |
| ) | Magistrate Judge George J. Limbert |
| v.  ) | |
| ) | |
| MAHONING COUNTY BOARD OF  ) | REPORT AND RECOMMENDATION |
| COMMISSIONERS,  ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant.  ) | |

The above case is before the undersigned on a motion for summary judgment filed by Defendant Mahoning County Board of Commissioners (Defendant). ECF Dkt. #31. Plaintiff Vandy Bryant (Plaintiff) has filed a pro se "answer" to the motion and a "reply." ECF Dkt. #s 34, 35.

For the following reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment and DISMISS Plaintiff's complaint WITH PREJUDICE. ECF Dkt. #31.

## I. FACTS AND PROCEDURAL HISTORY

On December 2, 2005, Plaintiff filed a *pro se* complaint in this Court against the above-named Defendant alleging the following:

    1.)    Request trial by jury for reason below:

    1a.)    Unjustly terminated from employment-because, the director was,[sic] made aware of complaints by the Plaintiff that went against the,[sic] Plaintiffs[sic] morales[sic] and county-policies.

    2.)    The director, was made aware of sexual advances, by the plaintiff from another-employee. And thus was fired because the other employee has personal ties with the-directors[sic] family.

    3.)    The director violated the family medical leave act, because once the above plaintiff requested f.m. leave, a series of hearing-were held to[sic] quickly and at the directors[sic] request by his personal friends (hearing ofcs) thusly terminating the above plaintiff.

    4.)    Publicly slandered Plaintiff[sic] name with other agencies -(business

associates) etc. Plaintiff has witnesses.

ECF Dkt. #1. Plaintiff further indicated that he was suing pursuant to 42 U.S.C. §1983 for violation of his civil rights, under 42 U.S.C. §2000e and Title VII for discrimination, and under the Family Medical Leave Act. *Id.* For relief, he requested an apology for the defamation, and reinstatement to his job with lost wages and/or money damages for pain and suffering. *Id.*

Plaintiff worked for the Mahoning County Lead-Based Paint Hazard Control Program (Program), which administers grants which are used to abate lead paint hazards in homes with children under the age of six. ECF Dkt. #31, Gary Singer Aff. The Program hired Plaintiff on January 31, 2000 as a Lead Hazard Control Housing Specialist in Training and he thereafter advanced to the position of Lead Hazard Control Housing Specialist. *Id.* Gary Singer is the former Director of the Program to whom Plaintiff refers in speaking about the "Director."

On January 31, 2005, Defendant terminated Plaintiff's employment, citing his repeated failure to report to work and his failure to report that he was taking days off from work. ECF Dkt. #31, Gary Singer Aff. Plaintiff was given verbal and written warnings relating to his absenteeism and he was afforded pre-disciplinary hearings before Defendant terminated his employment. ECF Dkt. #31.

Plaintiff filed an action with the United States Equal Employment Opportunity Commission (EEOC) on February 28, 2005 claiming sexual harassment, retaliation and hostile work environment. ECF Dkt. #32, Exhibit 7. This charge was filed with both the EEOC and the Ohio Civil Rights Commission (OCRC). Plaintiff asserted that he was fired because he picked up in his paycheck from a location in the office where it was not usually placed and he was fired because he complained to officials that Vikki Engleman was sexually harassing him. *Id.* The Ohio Civil Rights Commission conducted an investigation and dismissed the charge, finding that no probable cause existed that Defendant engaged in unlawful discrimination. ECF Dkt. #32, Exhibit 8. It does not appear that Plaintiff appealed the dismissal.

On December 2, 2005, Plaintiff filed the instant lawsuit. ECF Dkt. #1. Defendant thereafter filed an answer and later an amended answer. ECF Dkt. #s 14, 27. On February 1, 2007, Defendant filed the instant motion for summary judgment. ECF Dkt. #31. On February 16, 2007, Plaintiff filed

a "Motion for Jury Trial" and "Answer to Defendants[sic] Motion for Summary Judgment." ECF Dkt. #34. On that same date, Plaintiff filed a motion requesting that the Court not rule on Defendants' motion for summary judgment until March 12, 2007. ECF Dkt. #33. The Court granted Plaintiff's latter motion and deferred ruling on Defendant's motion for summary judgment until March 12, 2007.

On March 12, 2007, Plaintiff filed a motion captioned "(1) Motion for Summary Judgement and Affidavits of Gary Singer and Ms. Constance Thompson (2) Final Extension until April 28, 2007 to gather files, charts, and put together evidence to counter affidavits of Gary Singer, Constance Thompson." ECF Dkt. #35. Using discretion and giving Plaintiff the benefit of the doubt, the undersigned granted Plaintiff an extension until April 28, 2007 in order to "gather files, charts, and put together evidence to counter affidavits of Gary Singer, Constance Thompson." *Id.* Plaintiff has made no further filings.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting FED. R. CIV. P. 56(c)). The moving party can discharge this burden by showing that the nonmoving party has failed to establish an essential element of the nonmoving

3

party's case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted is viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings and must do so by presenting more than a scintilla of evidence in support of his position. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

The Court must grant summary judgment unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *Anderson,* 477 U.S. at 249. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the court is required to enter summary judgment. *Celotex*, 477 U.S. at 322.

### B. LAW AND ANALYSIS

Defendant moves for summary judgment in this case, asserting that no genuine issues of material fact exist and it is entitled to judgment as a matter of law on each of Plaintiff's four counts in his complaint. The undersigned notes that Plaintiff does not provide much detail in his complaint as to his causes of action and the facts surrounding them.

#### 1. 42 U.S.C. §1983--UNJUST TERMINATION

In order to establish a claim against a public official under 42 U.S.C. § 1983, Plaintiff must prove that the conduct of which he complains was: (1) committed by a person acting under the color of state law; and (2) deprived him of a federally protected constitutional or statutory right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Flint v. Ky. Dep't of Corr.,*

270 F.3d 340, 351 (6th Cir.2001); *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir.2000). By reading his complaint, the undersigned cannot determine the basis of Plaintiff's first count alleging Defendant's unlawful termination of his employment.  ECF Dkt. #1.  However, in his deposition, Plaintiff explained that this count involved "things that Gary Singer asked me to do that I could have been fired for if I had done them on my own.  Taking money from under the table, for example, giving a contractor estimates on bids that other contractors went- -."  ECF Dkt. #32 at 30. The following additional information was provided by Plaintiff in his deposition:

> Q: You're saying that Gary Singer wanted you to do what?  Take money under the table?
>
> A: I didn't say Gary wanted me to take money under the table.  That's absurd.
>
> Q: Then what did you just say?
>
> A: I said Gary wanted me to give certain contractors estimates that would give them an unfair advantage over bids, the contracts I was bringing out here to you.

*Id.* at 31.  The deposition continued:

> Q: So are you saying you got fired because of Vikkie[sic]'s actions toward you, or are you saying you got fired because of these contracts?
>
> A: I got fired because of all of it.  Because of Vikkie[sic], because of what I know illegally that Gary did, because of Connie.  All of it ties in together.

*Id.* at 32-33.

In order to survive summary judgment on his § 1983 action, Plaintiff must show sufficient evidence to create a genuine issue of material fact as to the following "two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *McQueen v. Beecher Community Schools,* 433 F.3d 460, 463 (6th Cir. 2006), citing *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) and quoting *Ellison v. Garbarino,* 48 F.3d 192, 194 (6th Cir.1995)).  Here, Plaintiff does not identify the constitutional basis of his §1983 action in his complaint or in his deposition and he fails to state whether he is raising a state or federal statutory or constitutional claim at all.  Nor does Plaintiff clarify the basis in his response to the motion for summary judgment.  Moreover, the

undersigned cannot discern federal constitutional claims from Plaintiff's limited statements about the claim regarding Gary Singer's allegedly illegal actions or Office Manager Connie Thompson's alleged "harassment" by checking up on Plaintiff and removing his work from his desk against county policies, giving it to Gary Singer, and then putting it back on his desk months later. *Id.* at 13, 26-27, 86-87.

Since no federal constitutional right or federal law violation is identified or implicated from Plaintiff's §1983 allegations, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment on Plaintiff's first count of the complaint and DISMISS this count WITH PREJUDICE.

**2.     SEXUAL HARASSMENT**

In his second count, Plaintiff appears to allege that Defendant terminated his employment because he reported sexual advances by a coworker who had personal ties with Gary Singer. ECF Dkt. #1. Defendant moves for summary judgment on its perception of Plaintiff's allegations under this count, arguing that it is entitled to judgment as a matter of law because Plaintiff cannot prove the elements of his claims of discrimination, retaliatory discharge and hostile work environment under Title VII. ECF Dkt. #31.

Generally, in order to establish a case of discrimination, the plaintiff bears the initial burden of showing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). Typically, in order for a plaintiff to establish a claim of employment discrimination, he must provide either direct evidence of discrimination or establish a *prima facie* case of indirect discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03, 93 S.Ct. 1817 (1973). *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir.1999).

*McDonnell-Douglas* requires a plaintiff to establish a *prima facie* case of employment discrimination by showing that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position that he lost, and (4) he was treated less favorably than a similarly situated member outside of the unprotected class. 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, a presumption of discrimination is created and the defendant must rebut this presumption by proffering a legitimate, non-discriminatory reason for its

6

decision. *Id.* If the defendant meets this burden, the burden shifts back to the plaintiff to show that the proffered reason was merely pretextual. *Id.* A plaintiff can show pretext by showing that the proffered reason (1) has no basis in law or fact; (2) did not actually motivate the defendant's conduct; or (3) was insufficient to warrant the challenged conduct. *Id.*

In order to support a retaliation claim, a plaintiff must show that: (1) he engaged in activity protected under Title VII; (2) the defendant knew of the plaintiff's exercise of his civil rights; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action.

In order to support a claim of hostile work environment based on sexual harassment under Title VII, an employee must show that: (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dept. of Youth Services,* 453 F.3d 724, 733 (6th Cir. 2006), citing *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Randolph,* 453 F.3d at 733, quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citation omitted). Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim. *Id.*

Further, when reviewing incidents of alleged sexual harassment, the Court considers the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive. *Randolph,* 453 F.3d at 733, citing *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir.1997). The Court looks at "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Randolph,* 453 F.3d at 733, quoting

*Harris,* 510 U.S. at 23, 114 S.Ct. 367. The Court can also look at the impact of the incidents on the employee's psychological well-being. *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

In the instant case, Plaintiff's complaint does not identify the alleged harasser. However, in his deposition, Plaintiff testified that Vikki Engleman, the Administrative Financial Assistant from April 2004 until December 2005, created a hostile work environment because she made sexual advances toward him all day long every single day, even though he asked her to stop. ECF Dkt. #32 at 17, 29, 66. Plaintiff testified that Mrs. Engleman constantly harassed him and made sexual advances by asking him about her breasts and whether she should get a breast reduction, asking him to look at her bottom, telling him she wanted to have an affair with him, hugging him, and pressing and brushing up against him. *Id.* at 67-68. He further testified that everyone in the office heard the comments and saw the advances and even Constance Thompson, the Office Manager, told him to talk to Gary Singer about the harassment. ECF Dkt. #32 at 15, 30. He stated that he spoke to his supervisor, Clyde Kemp, but no action was taken. *Id.* at 64. He alleged that his employment was terminated because he reported Mrs. Engleman's sexual advances and she had personal ties with Gary Singer because she tutored his daughter. *Id.* at 25.

In moving for summary judgment on the Title VII claims, Defendant attaches the affidavits of: Mrs. Engleman, who denies all of Plaintiff's allegations and states that she never made sexual comments or advances toward Plaintiff; the other workers in the office, who deny observing any sexual advances or comments made to Plaintiff from Mrs. Engleman and who deny that Plaintiff complained to them about such advances or comments; and the affidavit of Clyde Kemp, Plaintiff's supervisor, who not only denies observing any type of sexual conduct or advances made by Mrs. Engleman, but also denies that Plaintiff ever complained to him about sexual harassment by Mrs. Engleman. ECF Dkt. #31, Affidavits of Clyde Kemp, Constance Thompson, Cynthia-Wright Palmer, Diana Seydlorsky, Ron Detrow and Vikki Engleman. Defendant asserts that it is entitled to summary judgment on the sexual harassment claim because Plaintiff's allegations are wholly uncorroborated. ECF Dkt. #31 at 8.

The undersigned recommends that the Court GRANT Defendant's motion for summary

judgment and DISMISS Plaintiff's Title VII claims of discrimination, sexual harassment and retaliation. Plaintiff, as the nonmovant on summary judgment, must take affirmative steps in order to avoid the entry of summary judgment. FED. R. CIV. P. 56(e). He must present additional evidence beyond the pleadings and must do so by presenting more than a scintilla of evidence in support of his position. *Anderson,* 477 U.S. at 252. Plaintiff here presents nothing more than his own self-serving statements in order to establish that Mrs. Engleman continuously barraged him with sexual advances and comments all day and everyday and that others in the office saw and heard the sexual conduct and comments. He also presents only a self-serving statement that he informed his supervisor of the harassment, but his supervisor did nothing. This is insufficient to overcome the motion for summary judgment. *See Gunthorpe v. DaimlerChrysler Corp.*, 205 F.Supp.2d 820, 825 (N.D. Ohio 2002). "Plaintiff does not direct the Court to any evidence, such as affidavits or deposition testimony other than his own," in order to establish his claims. *Id.* Mr. Kemp, Plaintiff's supervisor, denies that Plaintiff ever informed him of sexual comments or advances by Mrs. Engleman. The other workers in the office also deny seeing or hearing any sexual comments or advances made by Mrs. Engleman. And Mrs. Engleman denies making any sexually suggestive comments or advances to Plaintiff. Plaintiff indicates that he can prove sexual harassment occurred by reviewing the computer harddrive on Mrs. Engleman's old computer because she sent him sexually charged materials. However, Plaintiff never asked for discovery of these materials so that he could present them in opposition to the motion for summary judgment. Accordingly, Plaintiff has no "additional" evidence to support his position beyond his own self-serving statements and complaint allegations.

Moreover, even if Plaintiff could establish the *prima facie* elements for discrimination and retaliation, Defendants present a legitimate, nondiscriminatory reason for the termination of Plaintiff's employment. Defendant indicates that Plaintiff's employment was terminated because of excessive absenteeism and his failing to report off from work. ECF Dkt. #31 at 8. Defendant provides evidence of Plaintiff's excessive absenteeism through the payroll records and lost time summary attached to the affidavit of Gary Singer. ECF Dkt. #31, Attachments. The records

indicated that in 2001, Plaintiff missed 75.30 hours of work, in 2002, he missed 50.50 hours of work, in 2003, he missed 301.75 hours of work and in 2004, he missed 465.25 hours of work. *Id.* Defendant also attaches a copy of a written reprimand sent to Plaintiff warning him in December 2003 of his absenteeism and failure to report absences in a timely manner. *Id.* Nearly one year later, Defendant notified Plaintiff that a pre-disciplinary hearing was scheduled due to his excessive absenteeism and chronic tardiness from July 2004 through December 2004. *Id.*

At the pre-disciplinary hearing held on December 13, 2004, Hearing Officer Attorney Connie Pierce reviewed the evidence, including Mr. Singer's testimony, and a time study indicating that Plaintiff had lost 86 hours of time in July 2004, 73.5 hours in August 2004, 27 hours in September 2004, 13.5 hours in October 2004, 78.5 hours in November 2004, and 7 of 8 days worked in December 2004. ECF Dkt. #31, Pre-Disciplinary Report of December 13, 2004. At the hearing, Plaintiff admitted that he had incurred some absences and had a lot of lost time and it was his fault. *Id.* However, he stated that he believed he had worked some hours for which he was not paid, but he had waited too long to challenge the payroll. *Id.* Attorney Pierce determined that Plaintiff had incurred excessive time loss during his absences and his argument and defense did not justify or otherwise rebut his absences. *Id.* She found that Plaintiff had violated Mahoning County Policies and Procedures. Plaintiff was subsequently suspended for three days. ECF Dkt. #31, Gary Singer Aff.

Plaintiff thereafter received notification on December 17, 2004 of a second pre-disciplinary hearing scheduled for December 23, 2004 for his failure to report to work on December 10, 2004. ECF Dkt. #31, January 5, 2004 Hearing Officer Report. The hearing was thereafter continued and finally held on January 5, 2005 with Hearing Officer Sara Scudier finding that despite being told at his previous hearing to report to work until further notice, Plaintiff had failed to report for or off from work on December 10, 2004 and from December 23, 2004 through January 5, 2004, except he left a message on December 27, 2004 indicating that he had been "locked out." *Id.* Plaintiff appeared at the hearing and did not challenge the facts as presented, leading Ms. Scudier to find that Plaintiff was absent without leave on December 10, 2004. *Id.* Plaintiff's employment was

10

terminated on January 14, 2005.

Plaintiff fails to raise a genuine issue of material fact in which to find that Defendant's termination of his employment was pretextual in order to sustain his discrimination claim because he fails to show that Defendant's proffered reason of firing him due to excessive absenteeism (1) had no basis in law or fact; (2) did not actually motivate Defendants' conduct; or (3) was insufficient to warrant the challenged conduct. *Id.* Nor does Plaintiff raise a genuine issue of material fact in which to find a causal connection between Plaintiff's alleged reporting of sexual comments/advances to his supervisor and the termination of his employment.

For these reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment on this claim and DISMISS Plaintiff's Title VII claims WITH PREJUDICE.

### 3. FMLA

Defendant also moves for summary judgment on Plaintiff's claim that it violated his rights under the FMLA. ECF Dkt. #31 at 11. In order to prevail on an FMLA interference claim, Plaintiff must show that (1) he was an FMLA eligible employee; (2) Defendant is an FMLA employer; (3) Plaintiff was entitled to FMLA leave; (4) Plaintiff gave Defendant notice of the intention to take leave, and; (5) Defendant denied Plaintiff the FMLA benefits to which he was entitled. *Cavin v. Honda of America Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003). In order to avoid the granting of summary judgment, Plaintiff must provide evidence establishing three elements as to his FMLA retaliation claim: (1) he availed himself of a right under the FMLA by notifying his employer of his intent to take leave; (2) he was adversely affected by an employment decision when he was discharged; and (3) a causal connection exists between his request for leave and the adverse employment decision that he suffered. *Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309, 314-15 (6th Cir. 2001).

Neither party provides a copy of the actual FMLA request for leave submitted to Defendant by Plaintiff. However, Plaintiff testified that he and the doctor of his common law wife completed the forms given to him by Defendant that were identical to those presented to him in his deposition. ECF Dkt. #32, Exhibit 2. Plaintiff testified that he was taking leave under the FMLA to take care

11

of his common law wife, Lori. ECF Dkt. #32 at 19. Plaintiff does not really identify the FMLA violation in his complaint, but he indicates in his deposition and in his response to the motion for summary judgment that Defendant did not provide him a written approval or denial of his FMLA application in violation of the law. ECF Dkt. #32 at 19; ECF Dkt. #34 at 3.

Defendant contends that Plaintiff was not entitled to request FMLA for his common law spouse Lori because he cannot show that he had an ongoing common law marriage with her since the date that he stated that they had began their common law marriage, March 3, 1986. ECF Dkt. #31 at 11. Defendant explains that Ohio abolished common law marriage on October 10, 1991 and only those common law marriages that validly existed prior to that date are still recognized. *Id.*, citing Ohio Revised Code §3105.12. Defendant attaches a copy of a Certified Abstract of Marriage from the Ohio Department of Health signed by the Mahoning County Probate Judge, which indicates that a marriage license was issued on February 17, 1995 to Plaintiff and Cora M. Johnson, the mother of his children. ECF Dkt. #32, Exhibit 3; ECF Dkt. #32 at 20. On that form signed by both Plaintiff and Ms. Johnson, they both indicate that no legal impediment to their marriage exists. *Id*. Moreover, as to Ms. Johnson, under the "Previously Married" box, it indicates two divorces, while under the same box for Plaintiff, it states "None." *Id*. Since Plaintiff married Cora Johnson on February 17, 1995 and in this form indicated no prior marriages and no legal impediment to this marriage, Defendant reasons that Plaintiff did not have a common law marriage to Lori. ECF Dkt. #31 at 11-12.

The undersigned recommends that the Court GRANT Defendant's motion for summary judgment on Plaintiff's FMLA claim and DISMISS this claim with prejudice. The FMLA regulations provide that employees can obtain FMLA leave in order to care for common law spouses. 29 C.F.R. §825.114(a)("[s]pouse means a husband or wife as defined or recognized under State law for purposes of marriage in the State where the employee resides, including common law marriage in States where it is recognized."). However, the State of Ohio abolished common law marriages on October 10, 1991 and still recognizes only those common law marriages which validly existed prior to October 10, 1991. Ohio Rev. Code §3105.12. The elements that Plaintiff must prove by

clear and convincing evidence in order to show that he had a common law marriage with Lori are: (1) an agreement of marriage *in praesenti;* (2) cohabitation as husband and wife; and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community. *State v. DePew*, 528 N.E.2d 542, 38 Ohio St. 3d 275, 279 (1988), citing *Nestor v. Nestor*, 472 N.E.2d 1091, 15 Ohio St.3d 143, 145-146 (1984).

The Certified Abstract of Marriage attached by Defendant to its motion for summary judgment appears to signify that Plaintiff did indeed apply to marry Cora Johnson in 1995, and he indicated on that form that he had no prior marriages and no legal impediment existed to that marriage. ECF Dkt. #32, Exhibit 3. When asked at his deposition about this Abstract of Marriage, Plaintiff did not deny that he filled out the form and signed it. ECF Dkt. #32 at 24. He indicated that he was going "through a bad time" with Lori at the time he applied to marry Cora, but he never had any intention of marrying Cora. *Id.* at 23-25. Accordingly, it appears that Plaintiff did not consider himself married to Lori. Thus, the Court should find that Plaintiff cannot establish the requisite elements of a common law marriage to Lori and therefore he was not eligible to apply for FMLA leave in order to care for her because she was not his spouse.

Even presuming that Defendant could establish that Lori was his common law spouse and he was therefore entitled to apply for FMLA leave in order to care for her, the undersigned would nevertheless recommend that the Court find that Plaintiff cannot meet the third element of *Skrjanc* in order to establish his FMLA claim. ECF Dkt. #32, Exhibit 3. Plaintiff provides no evidence of a causal connection between his request for leave and the adverse employment decision that he suffered and Defendant asserts that Plaintiff's employment was terminated because he failed to report to work and he failed to call in to report when he needed time off from work. ECF Dkt. #31 at 8.

Under the causation element, Plaintiff must show that he was discharged because he took leave-"or at least that his taking of leave was a 'negative factor' in the employer's decision to discharge." *Nameth v. Celina Financial Corp.,* No. 1:04CV2282, 2006 WL 561860 (N.D.Ohio 2006), quoting *Pharakhone v. Nissan N. America, Inc.,* 324 F.3d 405, 408 (6th Cir. 2003); *Heady v.*

13

*United States Enrichment Corp.,* 146 Fed. Appx. 766, 769-70, 2005 U.S.App. LEXIS 17555 *8-*9 (6th Cir.2005) ("To survive summary judgment, [plaintiff] must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge ."). Here, Plaintiff provides no evidence in which to show a genuine issue of material fact exists that the exercise of his FMLA rights was a motivating factor in his discharge from employment.

For these reasons, the undersigned recommends that the Court GRANT summary judgment in favor of Defendant on Plaintiff's FMLA violation claim and DISMISS this claim WITH PREJUDICE.

### 4.     DEFAMATION

In the fourth claim of his complaint, Plaintiff does not identify who allegedly slandered him. ECF Dkt. #1.  However, at his deposition, Plaintiff alleged that Mr. Singer publicly slandered him by telling other agencies and contractors that he stole something from the office.  ECF Dkt. #32 at 35.  Plaintiff could not remember when Mr. Singer made the comment, but it happened around the times of his pre-disciplinary hearings.  *Id.*  When prompted with more questions at his deposition, Plaintiff remembered that the comment made by Mr. Singer must have involved the time when he went to the office on a Saturday and took his own paycheck from the locked cabinet because his paycheck was not on his desk where it normally was.  *Id.* at 47.  Plaintiff also indicated that Mr. Singer made defamatory comments to the hearing officers at the pre-disciplinary hearings and he also told contractors that he stole something from the office.  *Id*. at 51-52.

Plaintiff evidently presents this defamation claim under Ohio law as he does not dispute Defendant's recitation of Ohio law for defamation in its motion for summary judgment.  In order to establish a defamation claim under Ohio law, a plaintiff must prove, by clear and convincing evidence, that the defendant made a false, defamatory statement pertaining to the plaintiff and that the defendant was at least negligent in publishing it. *Dorricott v. Fairhill Ctr. for Aging,* 2 F.Supp.2d 982, 993 (N.D.Ohio 1998) (citing *Lansdowne v. Beacon Journal Pub. Co.,* 32 Ohio St.3d 176, 178-80, 512 N.E.2d 979 (1987)).  "A defamation claim requires a showing of: 1) a false and defamatory statement concerning another, 2) an unprivileged publication to a third party, 3) fault amounting to

at least negligence by the publisher, and 4) either the actionability of the statements regardless of special harm or the existence of special harm caused by the publication. *Pollard v. City of Northwood,* 161 F.Supp.2d 782, 795 (N.D.Ohio 2001)*, citing Piro v. Franklin Township,* 102 Ohio App.3d 130 (1995).

Defendant first asserts that any statements allegedly made by Mr. Singer at the pre-disciplinary hearings are protected by a qualified privilege. Defendant cites *Bartlett v. Daniel Drake Memorial Hospital*, 75 Ohio App.3d 334, 599 N.E.2d 403 (1991) in support. In that case, the Ohio Appellate Court referenced *Evely v. Carlon Co., Div. Of Indian Head, Inc*., 4 Ohio St.3d 163, 447 N.E.2d 1290 (1983) in finding that a qualified privilege attached to statements made by an employer at a pre-disciplinary conference. *Bartlett,* 599 N.E.2d at 407. Plaintiff in this case provides no support to contradict the application of this holding to the statements made at the pre-disciplinary hearings. Therefore, in order for Plaintiff to succeed on his defamation claim against statements protected by this qualified privilege, he must show that Defendant "was moved by actual malice, such as ill will, spite, grudge or some ulterior motive" in making the statements. *Id.,* quoting *Kahn v. Kotten*, 43 Ohio St.2d 237, 248, 331 N.E.2d 713, 721 (1975). Plaintiff does not meet this burden. After prompting at his deposition, Plaintiff indicated that Mr. Singer made defamatory statements at the hearing when he did not tell the truth about Plaintiff's job absences. ECF Dkt. #32 at 38-40. However, at the December 13, 2004 hearing, Plaintiff admitted that he had incurred some absences and his only defense was that he worked on some days but did not get paid, although he never challenged payroll about getting paid for those days. ECF Dkt. #31, Exhibit 6 at 16-17. Further, at the January 5, 2005 hearing, Plaintiff did not challenge the facts as presented by Mr. Singer and Ms. Seydlorsky regarding his failure to report to work and to notify his employer that he was not coming to work. ECF Dkt. #31, Exhibit 6 at 18.

Plaintiff also testified that Mr. Singer and Ms. Seydlorsky made defamatory statements at his second pre-disciplinary hearing when they questioned him about his paycheck and said that he stole his paycheck. ECF Dkt. #32 at 47-48. Again, however, Plaintiff fails to allege malice or ill will in these comments. Moreover, Plaintiff did admit at his deposition that he took his paycheck out of a

15

locked cabinet on a Saturday and Mr. Singer and Ms. Seydlorsky did question him about the paycheck as they thought it was missing because he had taken it out of the locked cabinet on a Saturday and they found it missing on Sunday and were not sure whether to stop payment on the check. ECF Dkt. #32 at 47.

Since Plaintiff fails to allege the actual malice necessary to overcome the qualified privilege of the statements made by Mr. Singer and Ms. Seydlorsky at the pre-disciplinary hearings, the undersigned recommends that the Court GRANT summary judgment in favor of Defendant on this claim.

With regard to the allegations that Mr. Singer made defamatory statements to individuals outside of the pre-disciplinary hearings, the undersigned recommends that the Court GRANT summary judgment in Defendant's favor. Defendant points out that Plaintiff has only sued it as a political subdivision and he has not sued anyone in their individual capacity. ECF Dkt. #31 at 14-15. Defendant contends that it is immune from liability on Plaintiff's defamation claim pursuant to Ohio Revised Code Chapter 2744, which grants a political subdivision immunity from tort liability for the acts of the subdivision or its employees in connection with performing a governmental or proprietary function. *Id*. at 14.  2 at 51-52.

Ohio Revised Code § 2744.02(A)(1) grants political subdivisions immunity from liability "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Revised Code § 2744.02(B) provides exceptions when political subdivisions are liable for injury, death, or loss to persons or property caused by the *negligence* of their employees acting within their official capacity. *Macklin v. Turner,* No. 1:03CV2347, 2005 WL 2211170 (N.D. Ohio 2005), unpublished, citing *Ellithorp v. Barberton City Sch. Dist. Bd. of Educ.,* 1997 Ohio App. LEXIS 3053, at *5 (Ohio Ct.App. 1997). Ohio Revised Code § 2744.02(B) contains no exceptions for intentional torts. In *Wilson v. Stark County Department of Human Services,* 70 Ohio St.3d 450, 639 N.E.2d 105, 107 (1994), the Ohio Supreme Court held that: "[t]here are no exceptions to immunity from the intentional torts ...caused by a political subdivision's employees." Thus, if the tort of defamation is

16

characterized as an intentional tort under Ohio law, Defendant is indeed immune from liability from Plaintiff's defamation cause of action in this case.

The undersigned recommends that the Court find that Ohio law treats the tort of defamation as an intentional tort as found by the Federal District Court for the Southern District of Ohio upon review of Ohio cases. *Unroe v. Board of Educ. Rock Hill Local School Dist*., 1:04CV181, 2006 WL 22081 at *8 (S.D.Ohio 2006), unpublished, citing generally, *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.,* 81 Ohio App.3d 728, 612 N.E.2d 357, 363 (Ohio Ct.App.1992) (throwing defamation into the same bailiwick as other intentional torts); *Holzbach v. Jackson Twp.,* 2000 WL 1035798 (Ohio Ct.App. July 26, 2000) ("[t]his court has previously reviewed the issue of political subdivision immunity vis á vis claims for [the] intentional tort ... [of] defamation and have found political subdivisions not to be liable for intentional torts."); and *Iberis v. Mahoning Valley Sanitary Dist.,* 2001 WL 1647184, *6 (Ohio Ct.App. Dec. 21, 2001) (stating "this court [has] held that a claim of defamation [is] ... an intentional tort, entitling a political subdivision to immunity as set forth in R.C. Chapter 2744 ."). Since the Ohio courts characterize defamation as an intentional tort, the Court should apply Ohio Revised Code 2744.02(A)(1) and find that Defendant as a political subdivision is immune from liability from Plaintiff's defamation cause of action. Therefore, the Court should GRANT Defendant's motion for summary judgment on Plaintiffs' defamation claim as a matter of law.

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment (ECF Dkt. #31) and dismiss Plaintiff's complaint in its entirety WITH PREJUDICE.

Dated: May 23, 2007                                         /s/George J. Limbert
                                                            GEORGE J. LIMBERT
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objection within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).